

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00295-CV

---

## IN THE INTEREST OF E.H. AND K.H., CHILDREN

---

On Appeal from the 106th District Court
Lynn County, Texas
Trial Court No. 22-03-07825, Honorable Reed A. Filley, Presiding

---

January 23, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Pending before us is the appeal of the father of children EH and KH from the underlying court's order terminating his parental rights to his children.[1] His court-appointed attorney filed a motion to withdraw supported by an *Anders*[2] brief. Through the latter, counsel represented that the appeal was frivolous. We affirm.

---

[1] Mother is not a party to this appeal.

[2] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

*Background*

The Department first became involved with the family after an allegation of domestic violence during which both young children, EH and KH, were present. Father's girlfriend, Beth, and father had moved in together soon after meeting online. The altercation in question consisted of an argument during which father threw a marijuana bong at Beth.

Two months later, in March 2022, the Department was again contacted. KH, then aged two, had been taken to the hospital with severe injuries. They included a skull fracture coupled with significant bruising on his body and head. It occurred while father was working and the children were in the care of Beth. Father testified at the final hearing that "[m]y first initial thoughts when I first saw [KH] was that Beth had snapped and beat him." Though also having questions about her culpability, he further said "[s]he does have tendencies to snap and it's a way more higher possibility that she had caused the injuries."

In turn, Beth initially said she found KH and lacked knowledge how the injuries occurred. Later, she told father that KH fell off a bed. Eventually, she represented that father inflicted KH's injuries. However, law enforcement interviewed her and observed bruising on her hand. She also admitted to striking the child in the mouth after the child cursed at her. Eventually, she was arrested for and charged with injury to a child. Shortly thereafter, father and Beth married after her release from jail on bond and despite the pending charges related to hurting his son. Trial upon the charge remained pending at the time of the final termination hearing.

The Department removed the children from the home once the hospital determined the injuries were not accidental. Father was given a service plan that included actions he was to take to secure return of the children. The plan was developed to address drug use, domestic violence, violence against children, and stability. Father completed some but not all aspects of the plan. The trial court also heard testimony that father failed to apply the lessons learned in the several programs he did complete. Other evidence revealed that he 1) continued to test positive for use of controlled substances, 2) failed to attend the requisite number of NA/AA meetings, 3) underwent arrest for domestic violence against Beth, 4) failed to maintain a stable home, and 5) suffered eviction at one point.

Beth also testified at trial about various violent acts committed by father. They included: 1) his choking her; 2) his carrying one child "to the room with just [child's] arm"; 3) his "spank[ing] [the child] extremely hard to where he left bruises on him"; 4) his "slamming" the faces of the kids against the wall "[w]henever the boys sometimes would be in time out [and] . . . weren't looking at the wall"; and 5) his "hit[ting] them up side the head with his fist" for like reason. At time of the final hearing, father also had charges pending against him for domestic violence. Those were not the sole accusation of family violence levied against him. Evidence illustrated that he had previously been convicted of engaging in like criminal conduct.

***Discussion***

As observed by our Texas Supreme Court, appointed "[c]ounsel's obligation to the client may . . . be satisfied by filing an appellate brief meeting the standards set in *Anders v. California*, [386 U.S. 738 (1967)] and its progeny." *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016). Utilizing *Anders* should be rare, given the plethora of actual issues normally

3

involved in a proceeding.  In effect and when properly executed, the *Anders* process is an exhaustive endeavor, *Davis v. State*, 683 S.W.3d 828, 830 (Tex. App.—Amarillo 2023) (order), and must be treated as such by appointed counsel.  Indeed, counsel's analysis should begin with the premise that if there were issues worth trying, there are probably issues worth appealing.  *Id.*  And, only when a diligent search of the entire record by counsel uncovers merely frivolous issues should the *Anders* procedure be utilized.

Next, issues are frivolous or lack merit when they have no basis in law or fact, when they "'cannot conceivably persuade the court.'"  *Id.* (quoting *Bowen v. State*, No. 05-21-00845-CR, 2023 Tex. App. LEXIS 7249, at *1 n.2 (Tex. App.—Dallas Sep. 15, 2023, no pet.) (mem. op. on reh'g, not designated for publication)).  So, appellate counsel's duty consists of urging the arguable, irrespective of the likelihood of success. *Id.* Proper *Anders* analysis obligates counsel to explain how case law and the appellate record foreclose potential issues.  *Id.*  That necessarily includes explanation, proper citation to the record, and the application of pertinent legal authority.

But, counsel does not have the sole burden to peruse the record for arguable issues.  That task falls upon the reviewing court, as well.  It must conduct an independent analysis of the record and pertinent legal authority to determine if any potential error has basis in law or fact.[3]  *See In re Schulman*, 252 S.W.3d 403, 409 (Tex. Crim. App. 2008) (noting the court's obligation to conduct such examination).

As alluded to earlier, counsel filed an *Anders* brief, representing that "[a]fter a diligent review of the record and the legal standards applicable to the case, [she] believes

---

[3] Contrary to appellate counsel's insinuation to appellant in a letter, the reviewing court, not its "staff attorneys," determines the frivolity of the appeal.

4

that the trial court correctly ruled on all objections raised during the trial and that no reversible error was presented."[4] So too did counsel indicate she 1) provided a copy of the *Anders* brief and appellate record to father and 2) explained to him his right to file a pro se brief. Apparently, her initial effort to provide the record and *Anders* brief via certified mail proved fruitless for the mailing was returned as "refused." Counsel then attempted a second mailing via regular mail. Our records do not reveal whether it was refused or otherwise returned. This, however, is not true of this court's separate notification to father of his right to file a response to counsel's *Anders* brief. It was returned with the notation "return to sender not at this address." We believe the address to which each mailing was sent to be that of appellant's mother. He testified at trial to living with her. To date, this court has not received any communication from father.

Nevertheless, we independently examined the entire record for arguable issues supporting an appeal and to verify the accuracy of counsel's conclusion about the frivolousness of the appeal. No arguable issues were found. This court also reviewed the record to determine whether both legally and factually sufficient evidence supported the trial court's finding that father endangered the children under § 161.001(b)(1)(D) and (E) of the Texas Family Code. *See In re N.G.*, 577 S.W.3d 230, 234-35 (Tex. 2019) (requiring such review). It did. That evidence includes, but is not limited to, the matter discussed under the topic "Background." Like analysis occurred regarding the trial court's

---

[4] In so representing, counsel stated appellant had "not preserved any issues on legal or factual sufficiency for appeal due to the lack of preservation at the time of the jury trial." The record discloses that trial was to the bench. Thus, there was no need to preserve issues regarding the sufficiency of the evidence. *Office of the AG of Tex. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012) (stating that "[a]s a general rule, an appellant must first complain to the trial court by a timely request, objection, or motion and obtain a ruling as a prerequisite for appellate review of that complaint, but the general rule does not apply to complaints about the sufficiency of the evidence in a trial to the court").

finding that the children's best interests favored termination; legally and factually sufficient evidence supported it, as well.

Accordingly, there is no plausible basis for reversal, and the trial court's order terminating the parent-child relationship between father and EH and KH is affirmed.[5]

Brian Quinn
Chief Justice

---

[5] We take no action on counsel's motion to withdraw but call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (explaining that duty).